**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MARJORIE A. DORN,

                                        Plaintiff,

                                                                **REPORT AND**
            - against -                                         **RECOMMENDATION**
                                                                09-CV-2717 (ADS) (AKT)

DAVID BERSON, DAREMY COURT
QUALIFIED VENTURES, LLC, and DAREMY
COURT QUALIFIED, INC.

                                        Defendants.
------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      P̲RELIMINARY̲ S̲TATEMENT̲

        Plaintiff Marjorie Dorn ("Dorn" or "Plaintiff") commenced this securities fraud/RICO

action against Defendants David Berson ("Berson"), Daremy Court Qualified Ventures, LLC

("Daremy Ventures"), and Daremy Court Qualified, Inc. ("Daremy Qualified" and, together with

Daremy Ventures "Daremy" or the "Corporate Defendants") by filing her Complaint on June 25,

2009.  In the pleading, Dorn asserted claims for violations of Section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b-5 promulgated thereunder, joint venturer

liability, breach of contract, constructive trust, unjust enrichment, and money had and received

against all Defendants, as well as claims for violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 19 U.S.C. § 1962, common law fraud, breach of fiduciary duty,

negligence, gross negligence, conversion, and constructive fraud against individual defendant

Berson.  Defendants answered, *see* DE 6, and a Rule 16 initial conference was held at which time the Court entered a Case Management and Scheduling Order, *see* DE 9, 10.

On March 7, 2011, Andrew B. Schultz, Esq., counsel of record for all of the Defendants, moved to be relieved as counsel for the Corporate Defendants.  *See* DE 36.  Judge Spatt directed Attorney Shultz and Defendant Berson, in his capacity as a representative of Daremy, to appear for a conference on March 25, 2011 to address the motion.  Berson was advised that the failure to appear could result in a default being entered against the Corporate Defendants.  Berson failed to appear for the March 25, 2011 conference.  Plaintiff then moved for a default judgment against the Corporate Defendants, which the Court granted on March 25, 2011.  *Id*.

At the March 25, 2011 conference before Judge Spatt, Plaintiff's counsel advised the Court that Berson's previously filed personal bankruptcy action had been dismissed.  On that basis, counsel asserted that the automatic stay of the instant litigation as against Berson himself was no longer valid.  *See* DE 36.  Plaintiff's counsel was directed to serve Berson with a notice advising him that he had thirty (30) days from the date of service to appear in this case either *pro se* or through counsel or risk having a default judgment entered against him.  *Id*.  Plaintiff served the required notice personally and after Berson failed to appear, the Court entered a default judgment against him.  *See* DE 47.

Judge Spatt referred both matters to me for an inquest to determine and recommend what damages, if any, are appropriate in this matter, including any attorney's fees and costs.  *See* DE 36, 47.  Because Plaintiff seeks the same relief from all Defendants and seeks to impose joint and several liability on all Defendants in connection with some of the claims, the Court will address both referrals in this Report and Recommendation.

Plaintiff does not indicate the specific amount of damages she is seeking other than the relief demanded in the Complaint. *See* DE 36, 43. That relief consists of the following categories for the claims asserted against Berson only: (1) $81,703.40, along with treble damages for Plaintiff's RICO claim; (2) $81,703.40 plus interest for Plaintiff's fraud, breach of fiduciary duty, negligence, gross negligence, and conversion claims; and (3) $1,000,000 in punitive damages for the fraud, breach of fiduciary duty, conversion, and constructive fraud claims. The relief demanded in the Complaint for the claims against all Defendants includes: (1) $81,703.40 plus interest for the securities fraud, joint venturer, breach of contract, constructive trust, unjust enrichment, and money had and received; (2) $1,000,000 in punitive damages for the joint venturer and constructive trust claims; and (3) the twelve percent annualized return of Plaintiff's investment for the breach of contract claim. Plaintiff requests that the judgment on claims against all Defendants be joint and several. Plaintiff also requests attorney's fees and costs in connection with all of her claims. Defendant Berson submitted an Affidavit in Opposition to the Request by Plaintiff's Attorney for Legal Fees. DE 52. The affidavit was directed solely to Plaintiff's claim for attorney's fees and did not contest any of the other damage claims.

For the reasons set forth below, I respectfully recommend to Judge Spatt that Plaintiff be awarded damages in the amount of $81,703.40, plus the promised twelve percent (12%) returns per annum, and pre-judgment interest at a rate of nine percent (9%) per annum.

## II.    BACKGROUND

The following facts are taken from the Complaint and the November 30, 2010 Declaration of Marjorie Dorn in Support of Plaintiff's Statement of Material Undisputed Facts Pursuant to Local Rule 56.1 ("Dorn Decl."), annexed as Exhibit 3 to Plaintiff's Letter Request

for a Pre-Motion Conference [DE 25]. Defendant Berson is an accountant who, through the preparation of Plaintiff's tax returns for the years 2000 through 2008, became aware that Plaintiff had invested money in an "I.R.A. account." In or around March of 2004, Berson presented Plaintiff with an opportunity to invest in Daremy, which he described as a private investment fund that generated guaranteed returns of twelve percent per annum. Plaintiff trusted Berson as a financial advisor and broker. Dorn Decl. ¶ 11. Berson represented that if Plaintiff invested in the fund, she could liquidate the investment at any time. On or around May 6, 2004, Berson instructed the Plaintiff to roll over the entire amount of her retirement savings – i.e., $71,203.40 – which was then invested in an IRA account to Fiserv, Inc. *Id*. The next month, Plaintiff began to receive written account statements from Fiserv, Inc. indicating that her monies had been invested in Daremy Court Qualified Ventures LLC and that she was indeed receiving twelve percent returns. *Id*. ¶ 13. Based on the favorable statements she was receiving, over the next few years, Plaintiff contributed additional sums totaling $10,500 to the Daremy investment. *Id*. ¶ 15.

When the Plaintiff met with Berson to go over the filing of her 2007 tax returns in March 2008, Berson advised Plaintiff that he was liquidating all investments with Daremy and that the Plaintiff would receive her investment back by November 2008. *Id*. ¶ 18. Plaintiff did not receive the investment in November 2008 and made several calls to Berson to inquire about when the investment would be liquidated. *Id*. ¶ 19. Berson ultimately advised Plaintiff that someone in the fund had purchased shares of stock with her investment and there were not enough assets remaining to liquidate her investment and pay its accrued interest. *Id*. ¶ 21. Plaintiff made repeated requests thereafter to have her investment liquidated, but the requests were not honored.

## III.  LEGAL STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true.  *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y.  Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)).  A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir. 1995)).  The only question remaining, then, is whether Plaintiff has provided adequate support for the relief she seeks.  *Greyhound Exhibitgroup, Inc*., 973 F.2d at 158.   The moving party need only prove "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Id.* at 159.

In determining damages not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).  The moving party is entitled to all reasonable inferences from the evidence it offers.  *Au Bon Pain Corp. v. Arctect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

**IV.    DISCUSSION**

**A.    Damages for RICO Claim**

Plaintiff seeks $81,703.40 in compensatory damages for Defendant Berson's RICO violations as well as treble damages as provided for in the statute. "In order to recover damages under RICO, . . . a plaintiff must show '(1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation.'" *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439 (2d Cir. 2008)). Civil remedies available under RICO are limited by the so-called "RICO Amendment," enacted as part of the Private Securities Litigation Reform Act of 1995, which provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962" unless the defendant is criminally convicted of the fraud. 18 U.S.C. § 1964(c); *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011).

Pursuant to the RICO Amendment, Plaintiff here has no remedy under RICO because the conduct she relies on to establish a substantive violation of § 1962 is specifically actionable as securities fraud. Although Plaintiff frames the predicate acts as violations of 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1952 (relating to racketeering), the law is clear that where the predicate act is actionable securities fraud, a Plaintiff cannot avoid the limitations imposed by the RICO Amendment by simply applying a different label to the claim. *See, e.g. In re REFCO Secs. Litig.*, No. 07-CV-6767, 2010 WL 3911780, at *1 (S.D.N.Y. Sept. 28, 2010); *Cohain v. Klimley*, No. 08-CV-5047, 2010 WL 3701362, at *7-10 (S.D.N.Y. Sept. 20, 2010);

*Blythe v. Deutsche Bank AG*, 399 F. Supp. 2d 274, 278 (S.D.N.Y. 2005) (noting that "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud"); *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 205 F. Supp. 2d 243, 248 (S.D.N.Y. 2002) ("In amending RICO, Congress was clear in stating that the PSLRA was meant to eliminate the possibility the litigants might frame their securities claims under a mail or wire fraud claim."); *Cyber Media Grp., Inc. v. Island Mortgage Network, Inc.*, 183 F. Supp. 2d 559, 578-79 (E.D.N.Y. 2002); *Heffermnan v. HSBC Bank USA*, No. 99-CV-7981, 2001 WL 803719, at *1-4 (E.D.N.Y. March 29, 2001); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997). As explained in *In re Prudential Securities Inc. Limited Partnerships Litigation.*, "Congress intended [the RICO Amendment] to not only remove securities fraud as a predicate act under civil RICO, but also to prevent the pleading of 'other specified offenses, such as mail and wire fraud, . . . if such offenses are based on conduct that would have been actionable as securities fraud.'" 930 F. Supp. 68, 77 (S.D.N.Y. 1996) (quoting H.R. Conf. Rep. No. 369 at 47. U.S. Code Cong. & Admin. News 679 at 725) (ellipses in original).

According to the Complaint, the Defendants violated §§ 1341 and 1952 by inducing the Plaintiff to engage in a fraudulent investment scheme, aspects of which scheme were carried out through the use of the United States Postal Service. Compl. ¶¶ 13-45. The elements of a securities fraud claim under § 10(b) and Rule 10b-5 claim are: (1) a misstatement or omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiff relied; and (5) that the plaintiff's reliance was the proximate cause of the

injury. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). The gravamen of all of Plaintiff's claims is that Defendants induced the Plaintiff to invest in Daremy by making fraudulent representations regarding the nature of the investment, thereby causing Plaintiff injury. *See* Compl. ¶¶ 13-32. The fact that Plaintiff added some further allegations concerning Defendants' enterprise status to the RICO count does not change the fact that the predicate offense constitutes actionable securities fraud. Indeed, Plaintiff's counsel seems to acknowledge this fact because he describes the facts of another case – brought against Berson and Daremy Qualified, *Herman v. Berson*, No. 07-CV-10263, Opinion and Order (S.D.N.Y. Jan. 28, 2010) – in which the court granted summary judgment on the plaintiffs' securities fraud claims as involving "substantially similar conduct committed by Defendants Berson and [Daremy Qualified], as was committed by these entities in the instant case." Response to Order of the Hon. A. Kathleen Tomlinson Dated July 6, 2011 [DE 49] ("Pl's. Response") at 9.

Thus, since there is no indication that any Defendant was convicted of *criminal* securities fraud, an exception to the RICO Amendment, Plaintiff has no civil RICO remedy.[1]

---

[1]     As an aside, the Court notes that at the Initial Conference, the Court expressed concern regarding deficiencies in the RICO count as alleged and deferred discovery on this count until the deficiencies were cured. DE 9. In particular, the Court advised Plaintiff that the RICO claim lacked the requisite detail concerning, among other things, the alleged enterprise, the agreement purportedly entered into, and the criminal predicate acts. *Id.* Thereafter, on March 1, 2010, Plaintiff filed a motion to amend the Complaint that sought to cure many of the noted deficiencies. *See* DE 13. The proposed amended complaint added further allegations regarding the nature of the enterprise, its purpose, and members as well as the alleged pattern of racketeering activity. *See* DE 13-4, Ex. A. The proposed amended complaint also alleged that the predicate acts were violations of §§ 1341 and 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), as opposed to §§ 1341 and 1952 as alleged in the original complaint. Without explanation, on March 12, 2012, Plaintiff withdrew her motion to amend and the parties continued to litigate the causes of action set forth in the original complaint until the default judgment was entered. As this Court had advised

For these reasons, the Court respectfully recommends to Judge Spatt that no damages be awarded based on Plaintiff's RICO claim.

## B. Funds Invested in Daremy and Promised Returns

Plaintiff seeks a return of the $81,703.40 she invested in Daremy, plus interest, for the injury she incurred by the Defendants' acts. In connection with her breach of contract claim, Plaintiff also seeks the promised twelve percent (12%) annual returns.

Plaintiff alleges that she entered into an agreement with Defendants pursuant to which Defendants promised to invest her funds and provide a guaranteed return of twelve percent (12%) per annum, with the ability to liquidate at any time. Compl. ¶ 65; Dorn Decl. ¶ 9. Plaintiff further alleges that she has not been able to liquidate her investment and has not received any of the promised returns. Compl. ¶ 65; Dorn Decl. ¶¶23-25. In response to the Court's request that Plaintiff produce a copy of the relevant contract, counsel for Plaintiff stated that the contracts were oral. Pl's. Response at 2.

---

counsel on the record, the RICO cause of action as outlined in the original Complaint – the only pleading of record here — is not viable. *See* DE 14. Moreover, even if Plaintiff had pursued the proposed amendments, the RICO Amendment would still bar the remedy she seeks.

Under New York law,[2] the measure of damages for a breach of contract is an amount sufficient to put the non-breaching party "in as good a position as he would have been put by full performance of the contract." *Terwilliger v. Terwilliger*, 206 F.3d 240, 247 (2d Cir 2000) (quoting *Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 357 N.Y.S.2d 857 (1974)). Thus, Plaintiff here is entitled to a return of her investment, along with the promised annual return for the period during which she believed her money was invested in Daremy. Although it is unclear exactly when Plaintiff would have wanted to liquidate her investment, the Court finds that December 31, 2008 is an appropriate date to use to determine the period for which Plaintiff is entitled to twelve percent (12%) returns. Plaintiff states that when she met with Berson for tax purposes in March of 2008, Berson told her that he was liquidating all investments with Daremy Court and that she would receive her investment monies, with accrued interest by November of 2008. Dorn Decl. ¶¶ 17-18. In the Complaint, Plaintiff alleges that "[s]ometime in December 2008, having not received her investment, and having not heard from Defendant Berson, the Plaintiff repeatedly called Berson inquiring as to when her investment would be liquidated." Compl. ¶ 30; *see* Dorn Decl. ¶¶ 19, 22-24. Thus, it is apparent that Plaintiff sought to liquidate at least as early as December 31, 2008.

---

[2]    Where, as here, a federal court is exercising supplemental jurisdiction over state law claims, the court applies the choice of law rules of the forum state. *See Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 509 (S.D.N.Y. 2009). In considering the choice of law applicable to a breach of contract case, New York courts consider "'a spectrum of significant contacts, including the place of contracting, the place of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties.'" *Locator of Missing Heirs, Inc. v. Kmart Corp.*, 33 F. Supp. 2d 229, 232 (W.D.N.Y. 1999) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). Considering all of these factors, the Court concludes that New York law applies to Plaintiff's breach of contract claim.

The Court also finds that Plaintiff submitted sufficient documentation substantiating her claim that she invested in Daremy.  For example, Plaintiff provided an IRA Contribution Information Form reflecting that in 2004, she rolled over $71,203.40 from her IRA Account to First Trust Corporation DBA of Fiserv Trust Company.  *See* Pl.'s Response, Submission 1, Ex. B.  Although the IRA Contribution Information Form is not properly authenticated, the information contained in it is consistent with the allegations in the Complaint, which are assumed to be true for purposes of this motion as well as Plaintiff's Declaration signed under penalty of perjury.  *See* Compl. ¶ 20; Dorn Decl. ¶ 11.  The Plaintiff also submitted cancelled checks, authenticated by an employee of the issuer bank reflecting the following payments from a bank account held by Plaintiff and her husband:  (1) March 8, 2005 payment to First Trust Corp. in the amount of $1,500;[3] (2) March 8, 2006 payment to Fiserv in the amount of $4,500; and (3) March 16, 2007 payment to Fiserv in the amount of $4,500.  *Id.*, Submission 1, Ex. D.  The Complaint alleges upon information and belief that First Trust Corporation D/B/A of Fiserv Trust Company, a wholly owned subsidiary of Fiserv Trust Company, administered the investment in Daremy. Compl. ¶¶ 21-22.  Even though the allegations are pled on information and belief, the Court may accept them as true since they pertain to facts primarily within the defendant's knowledge .  *See J&J Sports Prods., Inc. v. Bernal*, No. 09-CV-3745, 2010 WL 3463156, at *3 (E.D.N.Y. July 28, 2010).  Thus, the Court finds that Plaintiff submitted sufficient documentation to support her claim that she invested $81,703.40 in Daremy from 2004 through 2007.

---

[3]     The bank affidavit incorrectly states that the date of the first check is May 8, 2005.  The Court assumes this was an inadvertent error and relies on the actual check date which is consistent with the allegations in the Complaint.  *See* Compl. ¶ 27.

Accordingly, the Court calculates the amounts owed to Plaintiff for Defendants' breach of contract as follows:

| Date Invested | Amount Invested | # of Days for Which 12% Returns Due (i.e. Date Invested through Dec. 31, 2008) | Per Diem Return (12% × Amount ÷ 365) | Returns Due (# of Days for Which Returns Due × Per Diem Return Rate) |
|---|---|---|---|---|
| May 6, 2004[4] | 71,203.40 | 1700 | $23.41 | $39,797 |
| March 8, 2005 | 1,500 | 1393 | $.49 | $682.57 |
| March 8, 2006 | 4,500 | 1028 | $1.48 | $1,521.44 |
| March 16, 2007 | 4,500 | 655 | $1.48 | $969.40 |
| **Total**: | | | | $42,970.41 |

Plaintiff is therefore entitled to $124,673.81 (original investment of $81,703.40 plus $42,970.41 in returns due) as damages for her breach of contract claim. Because the Complaint alleges that all Defendants promised the same performance, joint and several liability is appropriate. *See Vierling Commcn's GMBH v. Stroyls*, No. 09-CV-6654, 2011 WL 5854625, at *3 (S.D.N.Y. Sept. 16, 2011); *NYKCool A.B. v. Pacific Fruit Inc.*, No. 10-CV-3867, 2011 WL 3666579, at *3 (S.D.N.Y. Aug. 9, 2011).

The Court notes that Plaintiff is likely entitled to recover this amount as a remedy for her securities fraud claim as well. Under the typical measure of damages for securities fraud, a buyer

---

[4]     The IRA Contribution Information Form does not specify the date when the rollover occurred, but the Complaint alleges that Plaintiff invested the funds in Daremy on or about May 6, 2004. Compl. ¶ 20.

is entitled to the difference between the value of what a buyer paid for the securities and the value of what he or she received (of which there is currently no evidence in the record in this case). *See Gurary v. Winehouse*, 235 F.3d 792, 799 (2d Cir. 2000). Some courts, however, have held that benefit of the bargain damages are available as an alternative remedy in securities fraud actions. *See McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995); *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 614 (2d Cir. 1994) (holding that benefit-of-the-bargain damages are available in a Rule 10b-5 action if they can be calculated with reasonable certainty); *In re UBS Auction Rate Sec. Litig.*, No. 08-CV-2967, 2009 WL 860812, at *4 (S.D.N.Y. March 30, 2009); *Int'l Motor Sports Group, Inc. v. Gordon*, No. 98-CV-5611, 1999 WL 619633, at *9 (S.D.N.Y. Aug. 16, 1999); *but see Aimis Art Corp. v. Northern Trust Sec., Inc.*, 641 F. Supp. 2d 314, 320 n.4 (S.D.N.Y. 2009) (noting apparent confusion in case law regarding availability of benefit-of-the-bargain damages in a securities fraud action).

The Court need not determine the amount of damages due on Plaintiff's securities fraud claim, or any of the other claims seeking the return of her investment, however, since "'[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery." *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 449 (S.D.N.Y. 2010) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995)). In such cases where a Plaintiff is seeking compensation for the same injury under multiple theories, the proper measure of damages is the one that represents the greater recovery. *Magee v. U.S. Lines, Inc.*, 976 F.2d 821, 822 (2d Cir. 1992); *Hettinger*, 733 F. Supp. 2d at 450; *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 71 (E.D.N.Y. 2002). Since the breach of contract claim is the only claim for which Plaintiff seeks the twelve percent (12%) return in addition to the amount

invested, the breach of contract theory yields the highest recovery and since the Court finds that Plaintiff is entitled to that amount, the Court need not analyze the other theories for which Plaintiff seeks a lesser amount of recovery.

###### D. Punitive Damages

Plaintiff seeks $1,000,000 in punitive damages on the fraud, breach of fiduciary duty, conversion, constructive fraud, gross negligence, joint venturer, and constructive trust claims. Plaintiff did not provide sufficient support for an award of punitive damages in connection with any of these claims and the Court finds that punitive damages are not appropriate.

Punitive damages are permitted under New York law for torts such as breach of fiduciary duty, fraud, and conversion. *See Fairfield Fin. Mortgage Grp., Inc. v. Luca*, 584 F. Supp. 2d 479, 484 (E.D.N.Y. 2008); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 415 n.14 (S.D.N.Y. 2010). Such damages are only available, however, in cases involving "gross, wanton, or willful fraud or other morally culpable conduct." *Hettinger*, 733 F. Supp. 2d at 450 (internal quotation omitted); *accord Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 (S.D.N.Y. 2010). The plaintiff must demonstrate that the defendant's conduct involved "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S. 2d 488 (1961)); *see Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S. 2d 339 (1994). Moreover, where, as here, the tort claims arise out of a contractual relationship between the parties, Plaintiff must demonstrate that the conduct was aimed at the public generally. *See Marini v. Adamo, –* F. Supp. 2d – , No. 08-CV-3995, 2011 WL 4442710, at *20 (E.D.N.Y. Sept. 26, 2011) (citing *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt*

*Meridian Constr. Corp.*, 95 F.3d 153, 160-61 (2d Cir. 1996)); *Cerveceria Modelo, S.A. v. USPA Accessories LLC*, No. 07-CV-7998, 2008 WL 1710910, at *6-7 (S.D.N.Y. April 10, 2008); *Johnson v. Home Savers Consulting Corp.*, No. 04-CV-5427, 2007 WL 925518, at *7 (E.D.N.Y. March 23, 2007), *adopted by*, 2007 WL 1110612 (E.D.N.Y. April 11, 2007); *ConocoPhillips v. 261 East Merrick Road Corp.*, 428 F. Supp. 2d 111, 128-29 (E.D.N.Y. 2006); *Int'l Motor Sports Group, Inc.*, 1999 WL 619633, at *10.

There are no asserted facts in the record reflecting the high degree of moral culpability required to warrant the imposition of punitive damages. Instead, the Plaintiff makes reference in the Complaint to Defendant Berson being aware that the statements and representations he was making were false or that he should have known they were false. Compl. ¶ 71. Such fraud, Plaintiff asserts, involved "such an extreme degree of moral culpability" as to warrant an award of punitive damages. *Id.* ¶ 75. Plaintiff also alleges that Berson breached his fiduciary duty to her and that such breach was "wanton, willful, reckless, criminal in nature and involved such an extreme degree of moral culpability" that punitive damages are warranted.[5] *Id.* ¶ 81. Plaintiff does not point to any criminal charges brought against Berson or the corporations *based on the facts of this case*. Moreover, there is no assertion or explanation regarding what aspects of Berson's behavior reflect a criminal indifference to civil obligations.

---

[5]     It is also worth noting that the Plaintiff pleaded certain claims in the alternative. For example, in the Seventh Claim for Relief, alleging negligence, Plaintiff states that "[a]ssuming, arguendo, and in the alternative, that Defendant Berson believed the statements that [sic] described in paragraphs 18, 23, 25 and 26 above to be true, Defendant Berson was nevertheless negligent in failing to investigate and discover the true nature of the investment in Daremy . . . ." Compl. ¶ 85.

Plaintiff's counsel refers to another case against the Defendants involving similar conduct and states in his unsworn submission that Defendant Berson repeatedly attempted to have Plaintiff's husband, Alvin Dorn, invest in Daremy. However, Plaintiff has not demonstrated that Defendants' conduct was directed at the public in general. In addition, there is no evidence or reference anywhere in the Complaint to Berson's attempts to have Alvin Dorn invest in Daremy. The Court also notes that there is no mention whatsoever by Marjorie Dorn in her sworn Declaration of any attempts by Defendant Berson to have her husband, Alvin Dorn, invest in Daremy. *See* Dorn Decl. The Court is constrained in the context of a default to review the pleading and any sworn statement by a party with first-hand knowledge here – not the unsworn representation of counsel who lacks first-hand knowledge. Moreover, the fact that there may be one or two other similar private transactions does not necessarily mean that the conduct was directed at the public. In the context of a default, the Court cannot consider hearsay representations from another case.

Plaintiff also failed to demonstrate her entitlement to an award of punitive damages in connection with her "joint venturer" and "constructive trust" claims. Constructive trust is a remedy, not a cause of action, *see Anwar*, 728 F. Supp. 2d at 420, and it appears that rather than assert a cause of action for "joint venturers," Plaintiff actually intended to seek the imposition of joint and several liability for her fraud claim, *see* Compl. ¶¶ 59-63. For purposes of this Report and Recommendation, it is enough to state that, regardless of the sufficiency of the claims, Plaintiff is not entitled to punitive damages in connection with these claims given her failure to demonstrate morally culpable conduct. Moreover, the Court notes that the two cases cited by Plaintiff regarding punitive damages for joint venturers are inapposite. *Mitchell v. A.F. Roosevelt*

*Ave. Corp.*, 207 A.D.2d 388, 615 N.Y.S.2d 707 (2d Dep't 1994) does not discuss punitive

damages and *Giblin v. Murphy*, 73 N.Y.2d 769, 536 N.Y.S.2d 54 (1988) did not involve a joint

venture and, in any event, is no longer good law.  *See ConocoPhillips*, 428 F. Supp. 2d at 129;

*Cerveceria Modelo, S.A.*, 2008 WL 1710910, at *7 n.5.

The remainder of the cases cited by Plaintiff in support of her punitive damages claim are

likewise unpersuasive.  Plaintiff relies on *Aldrich v. McKinnon*, 756 F.2d 243 (2d Cir. 1985) for

the proposition that "fraud on the public is not a prerequisite to the award of punitive damages."

Pl's. Response at 11.  The *Aldrich* court stated that "[t]hough we need not decide the issue, we

note that the New York Court of Appeals has suggested that the showing of a fraud on the public

is no longer a prerequisite to the award of punitive damages."  756 F.2d at 248 n.5 (citing

*Borkowski v. Borkowski*, 39 N.Y.2d 982, 387 N.Y.S.2d 233 (1976)).  Both *Aldrich* and

*Borkowski*, however, were decided before the seminal *Roconavo* case and its progeny which hold

that public harm must be shown where the fraud arises out of a contractual relationship.  *See,*

*e.g., Johnson*, 2007 WL 925518, at *7.  In *Sieger v. Zak*, 74 A.D.3d 1319, 904 N.Y.S.2d 746 (2d

Dep't 2010), cited by Plaintiff in support of her claim for punitive damages in connection with

the breach of fiduciary duty claim, *see* Pl's. Response at 12, the court held that it was improper to

grant summary judgment on plaintiff's claim seeking punitive damages because issues of fact

remained.  The facts in that case were different from those asserted here and, in any event,

Plaintiff must do more than raise a triable issue of fact to obtain punitive damages at this stage.

The damages must be proven.  Finally, *Horst v. W.T. Cabe & Co., Inc.*, No. 07-CV-1782, 1977

U.S. Dist. Lexis 13178 (S.D.N.Y. Nov. 1, 1977), referenced by Plaintiff in connection with her

conversion claim, Pl's. Response at 12, merely stands for the proposition that punitive damages

are sometimes available in conversion cases. That proposition does not equate to a finding that they are proper here.

For the forgoing reasons, I respectfully recommend to Judge Spatt that no punitive damages be awarded in this matter.

### D.      Pre-Judgment Interest

Plaintiff also seeks pre-judgment interest on all of her claims. Pre-judgment interest on the equitable state law claims and the securities fraud claims are discretionary with the Court. Pursuant to New York Civil Practice Law and Rules § 5001(a), "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." The applicable rate of interest is nine percent (9%) per annum. N.Y. C.P.L.R. § 5004; *see Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484, 2010 WL 5978913, at *9 (E.D.N.Y. Oct. 22, 2010). Interest begins to run from the earliest ascertainable date the cause of action existed. *Ningbo Home Expo Co., Ltd. v. Life Sys. Imports, Inc.*, No. 08-CV-2066, 2010 WL 1459354, at *4 (E.D.N.Y. Feb. 16, 2010).

The Court finds that Plaintiff is entitled to pre-judgment interest because such interest is available on at least one of the claims for which she is entitled to relief, namely, the breach of contract claim. The Court further finds it appropriate that pre-judgment interest begin to run as of January 1, 2009, the first day after which Plaintiff sought to liquidate her investment account and was denied the right to do so. The per diem interest on the amount due, $124,673.81, is $30.74 ($124,673.81 × 9% ÷ 365 days). Accordingly, I respectfully recommend to Judge Spatt that Plaintiff be awarded $30.74 per day in pre-judgment interest from January 1, 2009 until judgment is entered.

### E. Attorney's Fees and Costs

Under the so-called American Rule, "each party is to bear its own costs of litigation, unmitigated by any fee-shifting exceptions." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Co. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). "Thus, absent a statutory obligation, an enforceable contractual obligation, or a situation involving 'willful disobedience of a court order,' litigants generally pay their own attorney's fees." *Billion Tower Int'l, LLC*, 2010 WL 5536513, at *10 (denying request for attorney's fees in damages inquest in breach of contract setting) (quoting *Aleyska*, 421 U.S. at 247, 258); *see also Watermelon Express, Inc. v. Marine Park Farmer's Market*, No. 05-CV-4649, 2007 WL 4125111, at *5 (E.D.N.Y. Sept. 14, 2007) (same).

Plaintiff requests attorney's fees and costs in connection with all of her claims, but does not explain the basis for awarding fees and costs. The Court is not aware of any grounds for disturbing the normal rule that each party pays its own fees. Although the RICO statute provides that a successful plaintiff may recover reasonable attorney's fees, *see* 18 U.S.C. § 1964(c), as explained earlier, Plaintiff cannot recover under RICO here. The Court also notes that attorney's fees are not awarded to prevailing parties in actions for violations of § 10(b) of the Securities and Exchange Act, *see Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993), and Plaintiff did not identify any contractual provision under which she is entitled to attorney's fees.

Defendant Berson submitted an affidavit opposing the attorney's fees requested on the grounds that they were not reasonable. *See* DE 52. Because the Court finds that Plaintiff is not entitled to attorney's fees, it need not consider the arguments advanced in Berson's affidavit.

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that Plaintiff be awarded no attorney's fees. A prevailing party is, however, entitled to costs associated with litigating a case. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party.") Pursuant to Local Civil Rule 54.1, within thirty (30) days after the entry of final judgment in this case, Plaintiff may "file with the Clerk a request to tax costs annexing a bill of costs and indicating the date and time of taxation." The bill should "include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred." In addition, bills for the costs claimed should be attached as exhibits. Local Civil Rule 54.1(a).

## V. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiff be awarded damages in the amount of $124,673.81, consisting of $81,703.40 for the money initially invested in Daremy and $42,970.41 in promised returns. I further recommend that Plaintiff be awarded pre-judgment interest at a rate of $30.74 per diem from January 1, 2009 until the date judgment is entered.

Plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961 as of the date of the entry of final judgment.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers

of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Plaintiff is directed to serve a copy of this Report and Recommendation on the Defendants forthwith and to file proof of service on ECF.**

**SO ORDERED.**

Dated: Central Islip, New York
     March 1, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge